STATE of Tennessee, Appellee,

v.

Jackie Wayne BEASLEY, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Opinion Filed June 6, 1985.

Permission to Appeal Denied by Supreme Court Sept. 30, 1985.

William L. Shulman, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Kevin Steiling, Asst. Atty. Gen., Jack Seaman, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

DWYER, Judge.

Appellant was convicted by a jury of murder in the first degree, T.C.A. § 39-2-202, aggravated assault with a deadly weapon, T.C.A. § 39-2-101, and two counts of assault with intent to commit murder in the first degree involving bodily injury, T.C.A. § 39-2-103. The jury sentenced appellant to life imprisonment for the first-degree murder conviction. Sentencing on the other offenses was stayed, and a motion for new trial as to these offenses was taken under advisement.

Absent an attack on the sufficiency of the evidence, it suffices to relate that on the evening of September 4, 1982, appellant stood in the doorway and fired several shots into the Ease On In Tavern in Nashville. Kim Gratton was killed as a result of the fusillade.

Less than an hour before the shooting, appellant had had an altercation with Charles Gregory Byrd, who was playing pool. Appellant had asked to use Mr. Byrd's pool cue, but Mr. Byrd refused. Appellant became angry, left the tavern and returned armed shortly thereafter. He walked into the tavern and opened fire. Mr. Byrd was grazed across the chest by one of the bullets. Mr. Byrd's cousin, John West, who was also playing pool, was shot in the back. Anthony Griffin, another man who was playing pool, was shot in the hip.

In his first issue appellant contends that the trial court erred in instructing the jury on felony-murder, where the indict-

ment alleged only "common law" murder and the State first requested the felony-murder instruction at the close of the proof. He asserts that because of the lateness of notice that the State intended to rely on the felony-murder theory, he was denied due process by law.

The Tennessee Supreme Court has held that specification of the felony in a first-degree murder indictment is unnecessary. *Sullivan v. State,* 173 Tenn. 475, 121 S.W.2d 535 (1938). The perpetration of the felony, during which a homicide occurs, is the legal equivalent of premeditation, deliberation and malice. *Id.* at 538. The felony and the homicide together constitute the one crime of murder and may be charged as ordinary murders are charged. *Id. See also State v. Johnson,* 661 S.W.2d 854 (Tenn.1983); *Tosh v. State,* 527 S.W.2d 146 (Tenn.Crim.App.1975). Therefore, appellant was not denied due process or deprived of the opportunity to prepare a defense. *Blake v. Morford,* 563 F.2d 248 (6th Cir. 1977), *cert. denied* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978); *Sullivan v. State, supra.* This issue is overruled.

■ In his second issue, appellant asserts that the trial court erred in instructing the jury that an element of felony-murder was "that the Defendant specifically intended to commit the alleged murder in the first degree of victims in Counts II *or* III." (emphasis added) Counts II and III charged appellant with assault with intent to commit murder in the first degree against Charles Gregory Byrd and Anthony Griffin, respectively. According to appellant this instruction improperly allowed the jury to consider alternatively these underlying alleged felonies and thereby deprived him of his right to a unanimous jury verdict. Tenn.R.Crim.Proc. 31(a).

Appellant relies on *United States v. Gipson,* 553 F.2d 453 (5th Cir.1977), in which the defendant Gipson was indicted for selling *or* receiving a stolen vehicle in violation of 18 U.S.C. § 2313. The trial judge gave a special instruction in response to a question asked by the jury. The judge charged as follows:

If each of you is satisfied beyond any reasonable doubt that he did any one of those acts charged, and did it with the requisite state of mind, then there would be a unanimous verdict, and there could be a return of guilty [,] ... even though there may have been disagreement within the jury as to whether it was receiving or storing or what.

*Id.* at 456.

The fifth circuit stated that the six acts prohibited by 18 U.S.C. § 2313 were receiving, concealing, storing, bartering, selling, or disposing—on a stolen vehicle moving in interstate commerce that· the defendant knew to be stolen. *Id.* at 458. The court stated that the acts fell into "two distinct conceptual groupings; the first consisting of receiving, concealing, and storing, and the second comprised of bartering, selling, and disposing." *Id.* The court found the two conceptual groupings to be sufficiently different such that a jury finding of the *actus reus* element of the offense might be nonunamimous. *Id.* 458–59. "[T]he jury was permitted to convict Gipson even though there may have been significant disagreement among the jurors as to what he did;" therefore, his right to a unanimous jury verdict was violated. *Id. See also State v. Creason,* 68 N.C.App. 599, 315 S.E.2d 540 (1984) (verdict of guilty for selling *or* delivering deemed to not positively appear unanimous as the law requires).

Whatever the validity of the *Gibson* rationale in our state, it clearly is not applicable to the factual situation presented in the case *sub judice.* Here, the alternative elements dealt with victims, not *actus reus* elements of the offense. The alternative victims, *i.e.,* Charles Byrd (count II) or Anthony Griffin (count III), are not "conceptually distinct." We refuse to apply the *Gibson* rationale when, as here, the potentially divisive theories of guilt are not "conceptually distinct." *United States v. McGuire,* 744 F.2d 1197, 1202 (6th Cir. 1984); *See also United States v. Zeidman,* 540 F.2d 314 (7th Cir.1976) (conviction after jury instruction allowing guilty verdict if defendant "devised a scheme to defraud at

least the creditor or the debtor" upheld). This issue is overruled.

In his next issue, appellant contends that the trial court erred in denying his motion to suppress his post-arrest statements. First, he asserts that he was arrested without probable cause.

Officer T.A. Mason was informed by radio dispatch that a shooting had occurred at a tavern at Nolensville Road and that appellant was the suspect and had fled the scene in a black-over-red Ford. Officer Mason, having been previously acquainted with appellant and knowing appellant's address, proceeded there. When he arrived, another officer arrived, shining his bright-lights on the front of the house. When this happened, the lights from inside the house went out, and one of the bedroom windows slid open.

Officer R.C. Hartberger was on patrol when he heard the radio dispatch. The dispatch gave an account of a shooting at a tavern, the name of appellant as the suspect, and a description of the get-away car, a black-over-red Ford. Officer Hartberger had prior knowledge that a car matching this description belonged to appellant's family. When Officer Hartberger arrived at the appellant's residence, he talked to Officer Mason, who told him about the bedroom window sliding open. Officer Hartberger got on the PA system and, subsequently, appellant came out of the house and was arrested.

■ The unpublished case of *State v. Curtis Leroy Mills,* Hamilton County No. 735 (Tenn.Crim.App., Knoxville, August 7, 1981), which is relied upon by appellant, is distinguishable from the case *sub judice.* In *Mills,* the arresting officer had no information or knowledge other than what he heard from the radio dispatch. In the case *sub judice,* the arresting officers were aware of a window being opened at appellant's residence shortly after the shooting and that the get-away car description matched that of a car that belonged to appellant's family. We conclude that the radio dispatch, coupled with the other facts and circumstances known by the arresting officers constituted probable cause for appellant's arrest. *E.g., State v. Taylor,* 661 S.W.2d 695 (Tenn.Crim.App.1983).

■ Appellant also urges that his arrest was unlawful because it was warrantless and without exigent circumstances. He urges that the holding of *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), whereby police officers may not enter a suspect's home to make a warrantless arrest even if the arrest is based on probable cause unless there are exigent circumstances excusing the necessity of a warrant, be applied to the case *sub judice.* Relying on *United States v. Morgan,* 743 F.2d 1158 (6th Cir.1984), he asserts that the police conduct in surrounding his residence, in shining a spotlight on the house, and in using a loudspeaker to order him out of the house constituted a constructive entry in violation of *Payton.*

The State urges that the crucial distinction between *Morgan* and the case *sub judice* is the presence of exigent circumstances surrounding appellant's arrest. We agree with the State. Here, the arresting officers were aware that appellant was suspected of having shot at least one person and had fled the scene of the crime. Because appellant could be considered armed and dangerous, and because the apprehension followed the occurrence of the offense closely in time, exigent circumstances were present. Where the suspect is dangerous or a grave offense or crime of violence has occurred, exigent circumstances exist which justify the warrantless arrest notwithstanding the alleged constructive entry of appellant's residence. *United States v. Morgan, supra* at 1162-63 (citations omitted). This issue concerning appellant's arrest is overruled.

■ In his next issue, appellant asserts that the trial court erred in instructing the jury on flight. T.P.I.—Crim. 37.16. The deceased victim's mother testified that she saw appellant run out the door and across the road to a car after shooting in the tavern. The car was parked in the middle of the median, the door was open, the mo-

tor was running, and the lights were off. He got in the car and left the scene. Where the evidence shows that the defendant was observed fleeing the scene of the crime, it is not error for the trial court to give the flight instruction. *Hall v. State,* 584 S.W.2d 819, 821 (Tenn.Crim.App.1979). This issue is overruled.

■ Next, appellant contends that the trial court erred in allowing a tape recording of a conversation between appellant and his girlfriend to be admitted into evidence because a substantial portion of the recording was inaudible and unintelligible. The tape itself has not been made a part of the record on appeal. In any event, we consider the tape's audibility as going to its weight, not its admissibility. *State v. Harris,* 637 S.W.2d 896 (Tenn.Crim.App.1982). This issue is overruled.

■ In his final issue, appellant contends that the trial court erred in allowing into evidence Officer Hartbarger's testimony concerning what was on the "whispered" portion of the tape recording. He urges the officer's testimony constituted improper lay witness opinion testimony that contradicted the defense theory appellant was too intoxicated to appreciate the wrongfulness of his conduct. The State contends that because it was established Officer Hartbarger used special listening equip-

ment, he was placed in a position to clarify what was said on the tape. *See State v. Jones,* 598 S.W.2d 209, 223 (Tenn.1980).

The manager and a waitress of the tavern testified that in their opinion, appellant was not intoxicated shortly before the incident. Officer Mason testified that, in his opinion, appellant was not intoxicated after his arrest. The victim's mother, an eyewitness to the shooting, saw appellant run out the door and take off in a car parked in the middle of the median, that had its lights off, its motor running, and its door open. These facts certainly indicate that appellant was not intoxicated and that he premeditated the shooting and planned his escape. We conclude that the admission of the testimony, if error, was harmless beyond a reasonable doubt in light of the overwhelming evidence of appellant's guilt of first-degree murder. T.R.A.P. 36(b).

The judgment of the trial court is affirmed.

DUNCAN and BYERS, JJ., concur.