STATE v. MOORE

[95 N.C. App. 718 (1989)]

STATE OF NORTH CAROLINA v. LEE HAMILTON MOORE

No. 893SC71

(Filed 3 October 1989)

### Narcotics §§ 1.3, 5 — sale and delivery of controlled substance — two offenses — only one punishment permitted

A single defendant may be charged with and convicted for sale of a controlled substance and delivery of the same substance, since the two crimes are separate and distinct offenses; however, in light of the legislative intent of N.C.G.S. § 90-95(a)(1), defendant may be punished for only one of those offenses where they involve the same transaction.

APPEAL by defendant from *Small, Judge.* Judgments entered 29 September 1988 in Superior Court, PITT County. Heard in the Court of Appeals 31 August 1989.

Defendant was indicted on two bills, each charging the following three counts: possession of a controlled substance with intent to sell or deliver, sale of a controlled substance, and delivery of a controlled substance in violation of N.C.G.S. § 90-95(a)(1). Defendant was found guilty on the first bill of possession of a controlled substance (a lesser included offense), sale of a controlled substance, and delivery of a controlled substance. On the second bill, defendant was found guilty of possession of a controlled substance with the intent to sell or deliver, sale of a controlled substance, and delivery of a controlled substance.

This case involves two purchases of the hallucinogenic mushroom, psilocyn, a Schedule I controlled substance by an undercover deputy sheriff, T. G. Shane, from the defendant, Lee Hamilton Moore. Both purchases were executed between the undercover deputy sheriff and the defendant, with Robert William Dorney, a confidential police informant acting as an intermediary.

In September of 1987, Robert Dorney began working as a paid informant relaying information about drug activity in the Pitt County area to the Greenville Police Department. Sometime during that month, Dorney gave the defendant a specimen of psilocyn mushrooms and told the defendant that he could grow additional mushrooms from the specimen. Defendant took the mushrooms and succeeded in propagating and growing more mushrooms in a con-

tainer in the closet of his bedroom. On 16 October 1987, the defendant was contacted by the informant, Dorney, and told that he had someone who was interested in making a purchase of psilocyn from Moore. Defendant later met with the informant and the undercover officer, at which time the defendant sold to the officer a five-gram packet of psilocyn for $35. Approximately a month later on 15 November 1987, the informant and the undercover officer went to the defendant's residence where Officer Shane purchased from the defendant another ten grams of psilocyn mushrooms for $70.

Defendant was arrested 13 January 1988 and charged under N.C.G.S. § 90-95(a)(1) which reads in pertinent part:

Except as authorized by this Article, it is unlawful for any person:

(1) To manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance; . . .

* * * *

(3) To possess a controlled substance.

Defendant pleaded not guilty to the charges, stood trial, and was found guilty by a jury on all counts, except on the first bill the defendant was found guilty of the lesser included offense of possession of psilocyn instead of possession with intent to sell or deliver. The court consolidated each three-count indictment into one judgment, sentenced the defendant to six years on each bill for a total of twelve years, and the defendant appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Victor H. E. Morgan, Jr., for the State.*

*Blount & Fornes, by Robin L. Fornes, for defendant appellant.*

ARNOLD, Judge.

We find merit in only one assignment of error. Defendant contends that it was improper for the trial court to issue separate sentences for both the sale of a controlled substance and the delivery of the same controlled substance. Under both indictments the jury found Moore guilty of selling psilocyn and guilty of delivering the same material. The first indictment stemmed from the events on 16 October 1987 when Moore sold and delivered a 5-gram package containing psilocyn to the undercover officer. The second indict-

ment resulted from a nearly identical transaction involving 10 grams of psilocyn that occurred on 15 November 1987.

All of the charges involved are Class H felonies with the exception of the simple possession charge, which is a Class I felony. N.C.G.S. § 90-95(b)(1), (d)(1). All the offenses carry a presumptive sentence of three years for each count, except possession of psilocyn carries a presumptive sentence of two years. N.C.G.S. § 15A-1340.4(f)(6) and (7). The trial court consolidated the three-count indictments into one judgment, sentencing the defendant to six years on each bill. It is clear from the following comments that the defendant was sentenced consecutively for both the sale and delivery of the same contraband in each transaction:

> THE COURT: Before I enter judgment, I have one question of counsel for the State and for the defendant. Do either of you have any citation indicating that for the purpose of punishment the sale merges with the delivery charge?

> MR. HAIGWOOD (District Attorney): Judge, they are separate charges and there is a case that says that.

> THE COURT: Separate charges?

> MR. HAIGWOOD: Yes, sir. There is a Court of Appeals case, and it will take me a few minutes but I can get it for you.

> THE COURT: That is my recollection. I would like to see that case, if not tonight, in the morning. I am going to go ahead and enter judgment because I think that's the law. I was just trying to reaffirm by opinion.

The trial court erred in punishing the defendant for both the sale and delivery in this situation. We do not believe the Legislature intended to impose consecutive sentences for both the offense of sale of a controlled substance and delivery of the same contraband when one individual has made the transfer.

It is clear that sale and delivery of a controlled substance are separate offenses. *State v. Dietz*, 289 N.C. 488, 223 S.E.2d 357 (1976); *see State v. McLamb*, 313 N.C. 572, 330 S.E.2d 476 (1985); *accord, State v. Creason*, 313 N.C. 122, 326 S.E.2d 24 (1985). "A sale is a *transfer* of property for a specified price payable in money." *Creason*, 313 N.C. at 129, 326 S.E.2d at 28. Delivery, in the context of the controlled substance statutes, means the "actual, constructive, or attempted transfer from one person to an-

other of a controlled substance." N.C.G.S. § 90-87(7). To prove delivery, the State is not required "to prove that defendant received remuneration for the transfer." *State v. Pevia*, 56 N.C. App. 384, 387, 289 S.E.2d 135, 137, *cert. denied*, 306 N.C. 391, 294 S.E.2d 218 (1982). It was proper to charge Moore separately on each bill of indictment with sale of psilocyn and delivery of the same controlled substance. This conforms with the above holdings and advances the intent of the controlled substance statute — to stop drug transfers of all kinds. *See Creason*, 313 N.C. at 129, 326 S.E.2d at 28. A jury should have the option after hearing the evidence of finding a defendant guilty of a sale, a delivery or of both offenses. Evidence may be presented that is insufficient to prove a sale occurred, but would support a conviction for delivery of the controlled substance. Nevertheless, while it is appropriate to separate these offenses for the purpose of charging a defendant, we do not believe the Legislature intended to punish a defendant twice for one transfer of the same contraband.

The intent of the Legislature controls the interpretation of a statute. *Jolly v. Wright*, 300 N.C. 83, 265 S.E.2d 135 (1980). In *Creason*, the Supreme Court examined the portion of N.C.G.S. § 90-95(a)(1), which makes possession "with intent to sell or deliver a controlled substance," a criminal offense. *Creason*, 313 N.C. at 122, 326 S.E.2d at 24. That court determined the intent of the Legislature in adopting subdivision (a)(1) of N.C.G.S. § 90-95 was two-fold: (1) to prevent the manufacture of controlled substances, and (2) to prevent the transfer of controlled substances from one person to another. *Creason*, 313 N.C. at 129, 326 S.E.2d at 29; *see* N.C.G.S. § 90-95. Other courts have found similar intent: "The gist of both offenses [sell and deliver], the act which the General Assembly intended to punish, is the transfer of controlled substances." *State v. Rozier*, 69 N.C. App. 38, 45-46, 316 S.E.2d 893, 898, *cert. denied*, 312 N.C. 88, 321 S.E.2d 907 (1984).

By criminalizing the sale *or* delivery of a controlled substance, the Legislature sought to prevent all attempts to place drugs into commerce by any act of transfer. *See Creason*, 313 N.C. at 129, 326 S.E.2d at 29. To expedite this purpose the more inclusive word "delivery" was used in the statute. The only difference in the terms "sell" and "delivery" is that money changes hands in a sale; otherwise, the terms in this context are the same. *See Creason*, 313 N.C. at 129, 326 S.E.2d at 29.

It is an overreading of the statute to conclude that the Legislature intended to punish a defendant twice for one drug transaction. The purpose of the statute is to prevent drug transfers, a double punishment for a single transaction violates this legislative intent and accomplishes nothing short of placing defendant in double jeopardy.

Our analysis of N.C.G.S. § 90-95(a)(1) is buttressed by *State v. Perry*, 305 N.C. 225, 287 S.E.2d 810 (1982). In *Perry*, the defendant was convicted of larceny and possession of the same stolen goods that were the subject matter of his larceny. The judge sentenced the defendant to three to six years imprisonment on the larceny conviction and two years imprisonment on the possession conviction. *Id.* at 227, 287 S.E.2d at 812. The court stated unequivocally that the offenses of larceny and possession of property that was the subject of the larceny were two separate and distinct offenses. *Id.* at 233, 287 S.E.2d at 815. Nevertheless, the court held that the individual could not in that situation be punished for both offenses. The court stated: "The fact that larceny and possession of property stolen in that larceny are two separate and distinct offenses, for which a defendant *may be* punished does not mean however that he is so punishable under our statutes." *Id.* at 234, 287 S.E.2d at 816.

In summary, a prosecutor may of course go to trial against a single defendant on charges for the sale of a controlled substance and the delivery of the same substance. These two crimes are separate and distinct offenses. However, in light of the legislative intent of the statute, we hold that the defendant may be punished for only one of those offenses where they involve the same transaction. *See State v. Perry*, 305 N.C. 225, 287 S.E.2d 810 (1982); *State v. Andrews*, 306 N.C. 144, 291 S.E.2d 581, *cert. denied*, 459 U.S. 946, 103 S.Ct. 263, 74 L.Ed.2d 205 (1982).

For purposes of sentencing in this case, the convictions against defendant for delivery of psilocyn on each bill of indictment are merged into the charges for selling the drug. A new sentencing hearing is ordered. We also find no prejudice as to defendant's other assignments of error and no error in defendant's trial.

Modified and remanded for sentencing.

Judges BECTON and COZORT concur.