IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 3, 2004 Session

## STATE OF TENNESSEE v. ROY CHISENHALL

**Appeal from the Circuit Court for Marion County**
**No. 5829    James Curtis Smith, Judge**

**No. M2003-00956-CCA-R3-CD - Filed June 3, 2004**

The appellant, Roy Chisenhall, was convicted by a jury of aggravated sexual battery. After a sentencing hearing, he was sentenced to eight years and nine months and, as recommended by the jury, assessed a $25,000 fine. The trial court denied his motion for new trial. In this direct appeal, the appellant challenges the sufficiency of the evidence, the jury instruction on flight, the jury instruction on aggravated sexual battery, and the absence of a jury instruction on corroboration of accomplice testimony. After a review of the record and applicable authorities, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Philip A. Condra, Jasper, Tennessee, for the appellant, Roy Chisenhall.

Paul G. Summers, Attorney General & Reporter; Michael Markham, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Colin Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

During the summer of 2001, eight-year-old D.R.[1] came to Jasper, Tennessee, to visit his grandmother, Flora Yahn. D.R. and his mother lived in Illinois. This was the second summer that D.R. had spent with his grandmother. The previous summer he befriended T.O., a twelve-year-old

_____

[1]It is the policy of this Court not to identify victims of child sexual abuse by name.

boy that lived in his grandmother's neighborhood and T.R., another boy who lived in the area. D.R. and his friends enjoyed spending the summer riding bikes in the neighborhood, playing basketball, and playing with toy trucks.

Sometimes, the young boys explored the neighborhood and surrounding areas. During one such venture, the boys found the appellant's cabin. The appellant promised the boys that "if you come back here [to the cabin] in a couple of days," he would give them bottle rockets. When D.R., T.O. and T.R. returned to the cabin on July 3, the appellant told them that he had hidden the bottle rockets. The three boys went into the cabin to look for the bottle rockets; T.R. went upstairs, while T.O. and D.R. stayed downstairs. D.R. found a bottle rocket under a couch and T.O. found a bottle rocket under a love seat. D.R. and the appellant were sitting on the love seat together when the appellant told the boys if they "jerked off while he watched" he would give them more bottle rockets. D.R. did not understand what the appellant meant.

At that point, the appellant had a squeeze bottle of lotion in his hand that he called his "jerking off lotion." The appellant told the boys, "This is how you get it on." The appellant gave the bottle of lotion to D.R., who squirted it on the floor. The appellant then took the lotion away from D.R., removed his own pants, and rubbed some of the lotion on his own "private parts." The appellant then pulled down D.R.'s shorts and underwear and applied lotion to D.R.'s "private" and then rubbed D.R.'s "private." The appellant told D.R., "This is how you jerk off." T.O. heard the appellant tell D.R. that he could not "quit till it gets hard." D.R. grabbed a lighter that was on a coffee table, lit the bottle rocket, threw it at the appellant and ran. T.O. ran with D.R. up the stairs and out the cabin door to get away from the appellant. T.R. also ran away. As they left the cabin, T.O. saw the appellant "jerking off."

Officer Linda Mason of the Jasper Police Department investigated the charges against the appellant. She interviewed both D.R. and T.O. and took written notes of the interviews. Officer Mason learned that the appellant's residence was located on property that belonged to his sister, Joanna Griffin. The property adjoined the Danny Thomas Subdivision where D.R.'s grandmother lived.

As a result of her investigation, around July 7, 2001, Officer Mason obtained warrants for the appellant's arrest. She attempted to serve the appellant several times, but was unable to locate him for approximately six months. She spoke with Ms. Griffin and learned that the appellant had gone to Alabama. Officer Mason was never able to serve the appellant with the original warrants.

Easter Corbitt, a resident of the Fackler community in nearby Stevenson, Alabama, lived next door to property owned by the appellant's sister, Linda Beavers. Fackler is located about thirty minutes from Jasper, Tennessee. Mrs. Beavers and her husband were building a cottage on the property during the summer of 2001, and the appellant was assisting them in the construction. Mrs. Corbitt remembered seeing the appellant working on the home on July 2 and 3, 2001. On July 3, 2001, the appellant and Ms. Beavers left the area when it was "dusky dark" outside. Ms. Beavers dropped her brother off at his cabin in Jasper that evening.

In August of 2001, the Marion County Grand Jury returned a multi-count indictment against the appellant charging him with aggravated sexual battery and three counts of solicitation of a minor for aggravated sexual battery. The case proceeded to trial in November of 2002 on the charge of aggravated sexual battery.[2] At the conclusion of the trial, the jury found the appellant guilty of aggravated sexual battery and recommended a $25,000 fine. After a sentencing hearing, the trial court imposed an eight-year, nine month sentence and imposed the $25,000 fine as recommended by the jury.

The appellant filed a motion for new trial which was denied by the trial court. On appeal, the appellant argues that: (1) the evidence was not sufficient to support the jury's verdict; (2) the evidence was not sufficient to support the jury charge on flight; (3) the trial court was required to instruct the jury on corroboration of accomplice testimony; and (4) the trial court's charge on aggravated sexual battery amounted to plain error.

Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

In the case herein, the appellant was charged with aggravated sexual battery and the jury found him guilty. On appeal, the appellant argues that the State failed to establish every element of aggravated sexual battery. Specifically, the appellant argues that the State failed to prove that he touched D.R. for the purpose of "sexual arousal or gratification," but rather merely "proved a voyeuristic intent" and that "the law requires the touching itself to be for sexual arousal or gratification, not a link in the chain." The State contends that the evidence supports the jury verdict.

---

[2]The record does not reflect the disposition of the three counts of solicitation.

Tennessee Code Annotated section 39-13-504 defines aggravated sexual battery as "unlawful sexual contact with the victim by the defendant" when "[t]he victim is less than thirteen (13) years of age." "Sexual contact" is defined in a separate statute as "the intentional touching of the victim's . . . intimate parts . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6).

Generally, when construing a statute, every word within the statute is presumed to "have meaning and purpose and should be given full effect." State v. Odom, 928 S.W.2d 18, 29-30 (Tenn. 1996) (quoting Marsh v. Henderson, 424 S.W.2d 193, 196 (Tenn. 1968)). This Court's primary duty in construing a statute is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995); see also State v. Davis, 940 S.W.2d 558, 561 (Tenn. 1997). Legislative intent should be gleaned from the "natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language." Carter v. State, 952 S.W.2d 417, 419 (Tenn. 1997). Furthermore, this Court should construe a statute so that its component parts are consistent and reasonable, and inconsistent parts should be harmonized, where possible. State v. Odom, 928 S.W.2d at 30.

Looking at the language of the statute, there is no requirement that the sexual contact itself be for sexual arousal or gratification. The statute also does not require that the appellant become sexually aroused or gratified by the sexual contact. The statute merely requires touching that can be "reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6); see State v. Steven Webster, No. W1999-00293-CCA-R3-CD, 1999 WL 1097820, at *1-*2 (Tenn. Crim. App. Nov. 22, 1999), perm. to appeal denied (Tenn. 2000) (rejecting the defendant's "novel" contention that there was no touching of his intimate parts where he placed his penis in the sleeping victim's hand). The appellant argues that he touched the private parts of D.R. not for the purpose of sexual arousal, but to instruct D.R. how to masturbate out of a voyeuristic intent. Further, the appellant seems to argue that the intentional touching had to be for his own sexual arousal or gratification and his own gratification was not the primary intent of the actions, his intent was to show the boys how to masturbate. This Court has held that:

> . . . it makes no difference which person is intended to be aroused or gratified. Although the conduct may vary, the result is the same. Simply stated, . . . , unlawful sexual contact was complete upon the defendant's intentional touching of the victim, whether for sexual arousal or gratification of himself, or of the victim, or of both.

State v. Schimpf, 782 S.W.2d 186, 189 (Tenn. Crim. App. 1989), superceded by statute as stated in State v. Jeffrey Edward Pitts, No. 01C01-9701-CC-00003 (Tenn. Crim. App. Mar. 18, 1999), perm. to appeal denied (Tenn. 1999) (internal citations omitted).

Turning to the proof at trial, the testimony showed that the appellant removed his pants and applied lotion to himself. Then, the appellant removed the shorts and underwear of D.R. and rubbed his "private part" with lotion, telling D.R. that he could not "quit till it gets hard." Further, T.O.

observed the appellant masturbating as the boys ran from the cabin. From this testimony, the jury could have reasonably concluded that the appellant touched D.R. for the purpose of sexual arousal or gratification. See State v. Jack Warren Emert, Jr., No. 03C01-9802-CC-00074, 1999 WL 512029, at *2 (Tenn. Crim. App. Jul. 21, 1999) (citing State v. Meeks, 876 S.W.2d 121, 131 (Tenn. Crim. App. 1993) (determining that a jury can draw on common knowledge and experience to ascertain if the defendant touched the victim for sexual arousal or gratification). Thus, the evidence was sufficient to support the conviction for aggravated sexual battery. This issue is without merit.

## Jury Instructions on Aggravated Sexual Battery

The appellant next argues that the trial court failed to properly instruct the jury on the elements of aggravated sexual battery. In so doing, the appellant acknowledges that the trial court followed the Tennessee Pattern Jury Instructions, but asserts that the instruction was an "incomplete or confusing statement of the elements of the offense." The appellant also concedes that he failed to object to the jury instructions and to include this issue in the motion for new trial. However, he contends that this Court should recognize plain error in this instance due to the effect the improper instruction had on his substantive rights. Specifically, he submits that the offense of aggravated sexual battery "can only be committed if 'that intentional touching' was 'for the purpose of sexual arousal or gratification'" and that the trial court's omission of that portion of the definition is "plain error" because it denied him of his "fundamental right to a unanimous jury verdict." The State counters that the appellant has waived the issue for failing to raise it in a motion for new trial and, even under a plain error analysis, the instruction was proper.

This Court may, in an exercise of its discretion, consider an issue which has been waived. However, in order for this Court to find plain error, the error must affect a substantial right of the accused. Tenn. R. Crim. P. 52(b). Generally, the failure to present an issue in a motion for new trial results in waiver. Rule 3(e) of the Tennessee Rules of Appellate Procedure provides that for appeals "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." See also State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial).

Whether properly assigned or not, however, this court may consider plain error upon the record under Rule 52(b) of the Tennessee Rules of Criminal Procedure. State v. Ogle, 666 S.W.2d 58 (Tenn. 1984). In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. See State v. Adkisson, 899 S.W.2d

626, 641 (Tenn. Crim. App. 1994); see also Tenn. R. Crim. P. 52(b). An error in jury instructions on the conduct element of an offense will be plain when it cannot be classified as harmless beyond a reasonable doubt.

Rule 52(b) of the Tennessee Rules of Criminal Procedure makes it clear that the plain error rule is not a remedy to be used in many situations. The intention of the rule is to serve the ends of justice. Therefore, it is invoked "only in exceptional circumstances [where necessary] to avoid a miscarriage of justice." Adkisson, 899 S.W.2d at 639 (quoting United States v. Gerald, 624 F.2d 1291, 1299 (5th Cir.1980)). Appellate courts are advised to use it sparingly in recognizing errors that have not been raised by the parties or have been waived due to a procedural default. Id.

"Because the Adkisson test provides a clear and meaningful standard for considering whether a trial error rises to the level of plain error in the absence of an objection," the Tennessee Supreme Court formally adopted this test when reviewing a record for plain error. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000). In doing so, it re-emphasized that the presence of all five factors must be established by the record before the existence of plain error can be recognized and that complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. Id. The "'plain error' must [have been] of such a great magnitude that it probably changed the outcome of the trial." Id. (citing Adkisson, 899 S.W.2d at 642).

The appellant contends that the trial court erred in its jury instruction regarding the mental state necessary to convict him for the crime of aggravated sexual battery. He argues that the jury instructions stated that, in order to convict him, it was only necessary for the jury to find that Defendant acted either intentionally or knowingly, when, in fact, it was imperative for the jury to find that the appellant acted intentionally with respect to his sexual contact with the victim. The appellant submits that this error is plain.

A defendant has a constitutional right to trial by jury. U.S. Const. amend. VI; Tenn. Const. Art. I, § 6. In Tennessee, the right to trial by jury is the right guaranteed to every litigant in jury cases to have the facts involved tried and determined by twelve jurors. State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991) (citing Willard v. State, 130 S.W.2d 99 (Tenn. 1939)). It follows that the defendant has a right to have "every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the judge." State v. Brown, 836 S.W.2d 530, 553 (Tenn. 1992) (citations omitted).

In the case herein, the trial court's instructions to the jury were as follows:

For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:
Number 1. The defendant had unlawful sexual contact with the alleged victim in which the defendant intentionally touched the alleged victim's intimate parts, or the clothing covering the immediate area of the alleged victim's intimate parts.
Number 2. That the alleged victim was less than 13 years of age.

Number 3. That the defendant acted knowingly.

Now the definitions. Sexual contact includes the <u>intentionally</u> [sic] touching of the alleged victim's intimate parts, if that <u>intentionally</u> touching can be reasonable [sic] construed as being for the purpose of sexual arousal or gratification. Intimate part includes the primary genital area, groin, inner thigh, buttock or breast of a human being. Knowingly means with knowledge, and in a criminal proceeding means that the defendant knew what he was about to do, and with such knowledge, proceeded to do the act charged. A person acts knowingly if that person acts with an awareness either that his or her conduct is of a particular nature, or that a particular circumstances [sic] exists. The requirement of knowingly is also established if it is shown that the defendant acted intentionally. <u>Intentionally</u> means doing an act by design or purpose, a determination to act in a certain way or to do a certain thing. A person acts intentionally when that person acts with a conscious objective either to cause a particular result, or to engage in a particular conduct. If after considering all the evidence and these instructions, you find beyond a reasonable doubt that the defendant is guilty of this offense, then it shall be your duty to find the defendant guilty.

(emphasis added).

The appellant argues that these instructions confused the jury as to the elements of the offense because the trial court did not submit the entire definition of sexual contact as the element which must be proven beyond a reasonable doubt but defined sexual contact only after stating the elements of the offense. Specifically, the appellant argues that to simply instruct the jury that the State must have proven "unlawful sexual contact" without "making clear that the purpose must be for sexual arousal or gratification appears to omit the significant restrictive language." Further, the appellant argues that placing the "conditional clause, 'if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification' in the definition section minimizes the importance of the condition."

In <u>State v. Howard</u>, a panel of this Court determined that the trial court had provided incorrect instructions on the elements of aggravated sexual battery and sexual battery and, even though the defendant did not raise the issue at trial or on appeal, the panel decided to address the issue in view of the remand which was based on the trial court's failure to instruct on a lesser-included offense. <u>State v. Howard</u>, 926 S.W.2d 579, 587 (Tenn. Crim. App. 1996), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>State v. Williams</u>, 977 S.W.2d 101 (Tenn. 1998)).

At the conclusion of the proof at the trial in <u>Howard</u>, the trial court instructed the jury that aggravated sexual battery included the following elements: (1) the defendant had unlawful sexual contact with the alleged victim or the alleged victim had unlawful sexual contact with the defendant; (2) the alleged victim was less than thirteen (13) years of age; and (3) the defendant acted intentionally, knowingly or recklessly. <u>Id.</u> Prior to <u>Howard</u>, this Court had held that the various elements of aggravated sexual battery contained different culpable mental states within the same

offense. See id. (citing State v. Parker, 887 S.W.2d 825, 827 (Tenn. Crim. App. 1994)). In fact, this Court had noted that our statutes plainly provided that "sexual contact" required "intentional touching" of the victim's intimate parts or clothing for the purposes of "sexual arousal or gratification," but that the definition of aggravated sexual battery, however, was silent regarding the culpable mental state as to the victim's age. See Tenn. Code Ann. §§ 39-13-501(6) & -504. Thus, we determined that under Tenn. Code Ann. § 39-11-301(c),[3] intentional, reckless, or knowing conduct applied to the element regarding age. Tenn. Code Ann. §§ 39- 11-301(c) (1997); Howard, 926 S.W.2d at 587. When an offense has different mens rea for separate elements, the trial court has a duty to set forth the mental state for each element clearly so that the jury can determine whether the state has met its burden of proof. Howard, 926 S.W.2d at 587.

We must determine whether the error, if any, in the jury instructions, rose to the level of plain error. Recognition of an error does not result in automatic reversal of a trial court's judgment since the error may be harmless. Adkisson, 899 S.W.2d at 626. After careful review of the record, we find that any error in the appellant's jury instructions did not adversely affect a substantial right of Defendant and, therefore, did not rise to the level of plain error under Tenn. R. Crim. P. 52(b). See State v. Joey L. Salcido, No. M1999-00501-CCA-R3-CD, 2001 WL 227357, at *10-*11 (Tenn. Crim. App. at Nashville, March 8, 2001), perm. to appeal denied (Tenn. Sept. 17, 2001) (determining that even when jury expressed confusion as to elements of offense of aggravated sexual battery and accompanying mens rea required for each element, that the trial court's charge to jury that defendant acted either "knowingly, intentionally, or recklessly" without specifying which mens rea applied to which element was harmless error).

First, we observe that the jury instruction given in Howard is distinguishable from the charge given in the case herein. The part of the instruction concerning "sexual contact" in Howard omitted any mention of the requisite mens rea. The trial court in Howard did not give an instruction on the culpable mental state until part (3), which the jury could have interpreted to apply to all of the preceding sections. The instruction given herein regarding "sexual contact" required the jury to find that "the defendant had unlawful sexual contact with the alleged victim, in which the defendant intentionally touched the alleged victim's intimate parts. . . (emphasis added)." Here, the word "intentional" clearly modified to the finding of "sexual contact." Further, the trial court went on to define "sexual contact." The requisite mens rea is contained within the definition of sexual contact itself as sexual contact necessarily implies an intentional touching. Further, even though the trial court failed to instruct as to the mens rea required for the victim's age, that action actually favored the defense. See State v. Jones, 889 S.W.2d 225, 229 (Tenn. Crim. App. 1994).

[A] jury instruction that omits an element of the offense . . . differs markedly from the constitutional violations we have found to defy harmless-error review. Those cases, we have explained, contain a "defect affecting the framework within which the

[3]Tennessee Code Annotated section 39-11-301(c) provides: "if the definition of an offense within this title does not plainly dispense with a mental element, intent, knowlege, or recklessness suffices to establish the culpable mental state."

trial proceeds, rather than simply an error in the trial process itself." Such errors affect the entire process and necessarily render a trial fundamentally unfair. Put another way, these errors deprive defendants of "basic protections" without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair. . . ."

State v. Garrison, 40 S.W.3d 426, 434 (Tenn. 2000) (quoting Neder v. United States, 527 U.S. 1, 8-9 (1999)).

We determine that the jury instruction error, if any, had no impact on the jury verdict and should be deemed harmless error. The instructions given to the jury included "intentional" in the definition which pertained to the element of sexual contact. The court further instructed the jury that it had to find the appellant acted "knowingly." The trial court followed the pattern jury instructions. There was not an omission of one of the elements of the crime as alleged by the appellant. We believe that the appellant was not deprived of "basic protections" without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence. . . ." Garrison, 40 S.W.3d at 434. The appellant is not entitled to relief on this issue.

### Jury Instruction on Flight

The appellant argues that the evidence was insufficient to support a jury instruction on flight. The State rebuts that the record supports the instruction. We agree.

In order for a trial court to charge the jury on flight as an inference of guilt, there must be sufficient evidence to support such instruction. There is sufficient evidence to support a jury charge on flight where there is proof of "both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or leaving the community for parts unknown." State v. Burns, 979 S.W.2d 279, 289-90 (Tenn. 1998) (quoting State v. Payton, 782 S.W.2d 490, 498 (Tenn. Crim. App. 1989)); State v. Franks, No. W2003-0003-CCA-R3-CD, 2003 WL 22351024, at *3 (Tenn. Crim. App., at Jackson, Oct. 14, 2003), perm. to appeal denied (Tenn. Jan. 4, 2004).

The law makes no nice or refined distinction as to the manner or method of a flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction.

State v. Whittenmeir, 725 S.W.2d 686, 688 (Tenn. Crim. App. 1986) (quoting Rogers v. State, 455 S.W.2d 182, 187 (Tenn. Crim. App. 1970)). It is proper for the trial court to instruct the jury on flight when the issue has been raised by the proof. See State v. Kendricks, 947 S.W.2d 875, 885-86 (Tenn. Crim. App. 1996) (explaining jury instruction on flight is proper statement of the law).

In the case herein, the trial court instructed the jury that

[t]he flight of a person accused of a crime in a circumstance which when considered with all the facts of the case, may justify an inference of guilt. Flight is the voluntary withdrawal of oneself for the purpose of evading arrest or prosecution for the crime charged. Whether the evidence presented proves beyond a reasonable doubt that the defendant fled is a question for your determination. The law makes no precise distinction as to the manner or method of flight, it may be open, or it [may] be hurried or concealed departure, or it may be a concealment within the jurisdiction. However, it take[s] both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight. If flight is proved, the fact of flight alone does not allow you to find that the defendant is guilty of the crime alleged. However, since flight by the defendant may be cause[d] by a consciousness of guilt, you may consider the fact of flight, if flight is so proven, together with all of the other evidence when you decide the guilty or innocent [sic] of the defendant. On the other hand, an entirely innocent person may take flight and this flight may be explained by proof offered or by the facts and circumstances of the case. Whether there was flight by the defendant, the reasons for it and the weight to be given to it, are questions for you to determine.

Officer Mason testified that she attempted to serve the appellant twice shortly after the incident occurred. She later learned that she was unable to do so because the appellant left Tennessee and went to Alabama. Officer Mason was unable to locate the appellant for six months. He was subsequently located in Alabama and extradited back to Tennessee. The evidence at trial sufficiently raised the issue of flight as there was proof of both a "leaving the scene" and a "leaving the community for parts unknown." Burns, 979 S.W.2d at 289-90. The trial court did not err in instructing the jury on flight.

Corroboration of Victim Testimony

Lastly, the appellant argues that the trial court erred by failing to instruct the jury that the testimony of accomplices had to be corroborated. Specifically, he claims that the victim was an accomplice because there were no threats or force used and "the logical inference is the victim, at the minimum, acquiesced in the conduct," thereby making the victim an accomplice and requiring corroboration of his testimony. The appellant further argues that he asserted an alibi, not consent, as a defense and that Tennessee Code Annotated section 40-17-121 "plainly dispenses with the requirement of corroboration when (1) the victim is under thirteen and (2) the defense is consent." The State counters that the law precludes the victim from being considered an accomplice.

We agree with the appellant that our law will not support a conviction based upon the uncorroborated testimony of an accomplice-witness. See State v. Robinson, 971 S.W.2d 30, 42 (Tenn. Crim. App. 1997). However, the legislature has determined that victims of certain crimes under the age of thirteen may not be considered accomplices:

-10-

If the alleged victim of a sexual penetration or sexual contact within the meaning of §§ 39-13-501 is less than thirteen (13) years of age, such victim shall, regardless of consent, not be considered to be an accomplice to such sexual penetration or sexual contact, and no corroboration of such alleged victim's testimony shall be required to secure a conviction if corroboration is necessary solely because the alleged victim consented.

Tenn. Code Ann. § 40-17-121.

The appellant's argument that Tennessee Code Annotated section 40-17-121 is inapplicable because he did not assert consent as a defense is without merit. The statute clearly provides that a victim under the age of thirteen is not an accomplice. Further, even if the testimony of the victim required corroboration, in the absence of a special request, the trial court does not err by failing to instruct the jury about accomplice testimony even if the circumstances of the case warrant such an instruction. State v. Anderson, 985 S.W.2d 9, 17 (Tenn. Crim. App. 1997). In the case herein, the appellant failed to make a special request for an accomplice instruction regarding the testimony of the victim. Accordingly, even if corroboration of the victim's testimony were required, the appellant has waived this issue on appeal. See id.; see also State v. Shawn Rafael Bough, No. E2002-00717-CCA-R3-CD, 2004 WL 50798, at *11 (Tenn. Crim. App. at Knoxville, Jan. 12, 2004); State v. Michael Cammon, No. M2001-00592-CCA-R3-CD, 2002 WL 31414089, at *2 (Tenn. Crim. App. at Nashville, Oct. 25, 2002). This issue is without merit.

## Conclusion

After a thorough review of the record, we conclude that none of the appellant's claims merit relief. Accordingly, we affirm the decision of the trial court.

JERRY L. SMITH, JUDGE

-11-